UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GRETCHEN MARY
MORANDY,

                Plaintiff,

v.

COMMISSIONER OF
SOCIAL SECURITY
ADMINISTRATION,

                Defendant.

_____/

Case No. 2:19-cv-13464
District Judge Stephen J. Murphy, III
Magistrate Judge Anthony P. Patti

**REPORT AND RECOMMENDATION TO GRANT PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT (ECF No. 12), DENY
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF No. 13),
and REMAND THIS MATTER TO THE COMMISSIONER**

**I.     RECOMMENDATION**:  For the reasons that follow, it is

**RECOMMENDED** that the Court **GRANT** Plaintiff's motion for summary

judgment (ECF No. 12), **DENY** Defendant's cross-motion for summary judgment

(ECF No. 13), and **REMAND** this matter to the Commissioner.

**II.    REPORT**

Plaintiff, Gretchen Mary Morandy, brings this action under 42 U.S.C. §§

405(g) and/or 1383(c)(3) for review of a final decision of the Commissioner of

Social Security ("Commissioner") denying her application for disability insurance

(DI) benefits.  This matter is before the United States Magistrate Judge for a

Report and Recommendation on Plaintiff's motion for summary judgment (ECF

No. 12), the Commissioner's cross-motion for summary judgment (ECF No. 13),

Plaintiff's reply (ECF No. 14), and the administrative record (ECF No. 9).

### A.   Background and Administrative History

Plaintiff filed her application for DI benefits in July 2017, alleging that her

disability began on May 30, 2017, at the age of 49.  (R. at 156.)  In her disability

report, she alleged that certain conditions (herniated discs in neck, multiple bone

spurs, degenerative osteoarthritis, spondylitis, chronic pain, bi-polar disorder,

anxiety, major depressive order, addiction disorder (in recovery), and sleep

disorder) limit her ability to work.  (R. at 202.)  In September 2017, the SSA found

that Plaintiff was not disabled.  (R. at 78-101.)

In October 2017, Plaintiff requested a hearing by an Administrative Law

Judge ("ALJ").  (R. at 102-103.)  On June 18, 2018, ALJ Xenos held a hearing, at

which Plaintiff and a vocational expert (VE), Scott B. Silver, testified.  (R. at 24-

77; *see also* R. at 269-271.)  On October 31, 2018, ALJ Xenos issued an opinion,

which determined that Plaintiff was not disabled within the meaning of the Social

Security Act.  (R. at 7-23.)

Plaintiff requested review of the hearing decision.  (R. at 151-155.)

However, on October 16, 2019, the Appeals Council denied Plaintiff's request for

review.  (R. at 1-6.)  Thus, ALJ Xenos's decision became the Commissioner's final decision.  Plaintiff timely commenced the instant action on November 22, 2019.

### B.    Plaintiff's Medical History

The administrative record contains approximately 244 pages of medical records, which were available to the ALJ at the time of the October 31, 2018 decision.  (R. at 23, 276-519 [Exhibits 1F-18F].)  Plaintiff's medical records will be discussed in detail, as necessary, below.

### C.    The Administrative Decision

Pursuant to 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4), at **Step 1** of the sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity (SGA) since May 30, 2017, the alleged onset date (AOD).  (R. at 12.)  At **Step 2**, the ALJ found that Plaintiff had several severe impairments (multilevel degenerative disc disease (DDD) in the cervical spine with stenosis and foraminal encroachment; lumbar DDD; cervical and lumbar radiculopathy; bilateral sacroiliitis; acromioclavicular joint arthritis, right shoulder; chronic pain syndrome; cognitive disorder, unspecified; bipolar disorder; major depressive disorder; and anxiety).  (*Id*. at 12-13.)  At **Step 3**, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.  (*Id*. at 13-15.)

**Between Steps 3 and 4** of the sequential process, the ALJ evaluated Plaintiff's

residual functional capacity ("RFC")[1] and determined that Plaintiff had the RFC:

> . . . to perform light work [*i.e., exertional limitations*] . . . except that
> the claimant is limited to occasionally climbing ramps and stairs;
> never climb ladders, ropes, or scaffolds; occasionally balance, stoop,
> crouch, kneel, and crawl [*i.e., postural limitations*]; frequently reach
> in all directions with the right upper extremity but never overhead
> [*i.e., manipulative limitations*]; occasional rotation, flexion, or
> extension of the neck [*i.e., postural and/or manipulative limitations*];
> never left foot controls [*i.e., exertional limitations*]; never work
> around unprotected heights or hazardous machinery [*i.e.,
> environmental limitations*]; and due to a combination of severe mental
> deficits, work would be limited to simple, routine tasks in a work
> environment free of fast-paced production requirements involving
> only simple, work-related decisions with few, if any, workplace
> changes and only occasional interaction with the general public,
> coworkers, and supervisors [*i.e., understanding and memory,
> sustained concentration and persistence, social interaction, and/or
> adaptation limitations*].

(*Id*. at 15-17.)  At **Step 4**, the ALJ determined that Plaintiff was unable to perform

any past relevant work.  (*Id*. at 17-18.)  At **Step 5**, considering Plaintiff's age,

education, work experience, and RFC, the ALJ found that there were jobs that

existed in significant numbers in the national economy that Plaintiff could perform.

(*Id*. at 18-19.)  The ALJ therefore concluded that Plaintiff had not been under a

---

[1] The claimant's "residual functional capacity" is an assessment of the most the
claimant can do in a work setting despite his or her physical or mental limitations.
20 C.F.R. §§ 404.1545(a), 416.945(a); *Howard v. Comm'r of Soc. Sec*., 276 F.3d
235, 239 (6th Cir. 2002).

disability, as defined in the Social Security Act, from May 30, 2017, through the date of the decision.  (*Id*. at 19.)

### D.   Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. at 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. at 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).  In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility."  *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

### E.    Analysis

In this appeal, Plaintiff questions:  (1) the ALJ's consideration of the state agency medical consultant's opinion; and, (2) whether the ALJ drew "an accurate and logical bridge" between the evidence and the result.  (ECF No. 12, PageID.566, 575-582; *see also* ECF No. 14.)  Plaintiff has the burden of proof on these issues. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).

1. **Whether the ALJ appropriately considered the state agency medical consultant's opinion as to Plaintiff's ability to push and/or pull with the right upper extremity (RUE)?**

On September 13, 2017, state agency medical consultant Richard Surrusco, M.D. completed a physical RFC assessment standardized opinion form.  (R. at 85-88.)  With respect to the exertional limitation of pushing and/or pulling (which includes operation of hand and/or foot controls), he filled in the words "[l]imited in upper extremities . . . [r]ight[.]"  (R. at 85-86.)  In the very next section of the form – "[e]xplain exertional limitations and how and why the evidence supports your conclusions[,]" and "[c]ite specific facts upon which your conclusions are based[,]" – Dr. Surrusco stated, "[l]imitations to occasional," and referenced, although without attribution:

- The October 25, 2016 notes from Advanced Orthopedics regarding shoulder pain (R. at 331-333, 451-453; *see also* R. at 359);

- The September 27, 2016 right shoulder x-ray, which revealed "acromioclavicular joint arthritis" (R. at 334-336, 454-456);

- The January 9, 2017 notes of Mohammad Al-Nouri, M.D. regarding neck pain (R. at 403-406);

- The January 30, 2017 physical therapy discharge summary (R. at 363);

- The April 19, 2017 notes from Mohammad Al-Nouri, M.D., which reflect status post cervical epidural steroid injections (CESI) x 3 (R. at 386-388; *see also* R. at 484-487);

7

- The May 18, 2017 bilateral sacroiliac joint steroid injection with fluoroscopic guidance (R. at 382-385); and,

- The July 12, 2017 progress notes from Sudheer Potru, D.O., which included a diagnoses of cervical radiculopathy, sacroiliitis, and chronic pain syndrome (R. at 379-381, 409-411).

(R. at 86.)  Notably, Dr. Surrusco referred to the same pieces of evidence in general support of his overall conclusions regarding Plaintiff's postural and manipulative limitations.  (R. at 86-87.)  Finally, in the "additional explanation," Dr. Surrusco also noted Plaintiff's activities of daily living (ADLs) and the December 9, 2016 cervical spine MRI (R. at 337-338, 407-408, 457-458, 518-519), after which he explained why "[t]he symptom-imposed limitations appear to be partially consistent."  (R. at 82, 87.)  Based on Dr. Surrusco's assessment of Plaintiff's exertional limitations, the SSA determined that Plaintiff "demonstrates the maximum sustained work capability" for "light" work.  (R. at 85-86, 91.)

When the SSA considers medical opinions, it considers several factors, including supportability, consistency, relationship with the claimant, specialization, and other factors.  20 C.F.R. §§ 404.1520c(c).  Referring to Dr. Surrusco's opinion as "the state agency determination," the ALJ found it to be "unpersuasive" because:  (1) "the decision-maker has never personally examined or treated the claimant[;]" (2) "the opinion is not entirely consistent with the evidence in the record[;]" and, (3) "the opinion lacks thorough support in terms of a detailed

explanation." (R. at 17 (citing R. at 78-92).)  Ultimately, the ALJ determined that

Plaintiff's RFC included several exertional, postural and manipulative limitations,

including that Plaintiff may "frequently reach in all directions with the [RUE] but

never overhead[,]" (R. at 15); however, the RFC does not have a similar limitation

with respect to *pushing and/or pulling with the RUE*.

### a. The ALJ's consistency and supportability descriptions  are problematic.

Plaintiff concedes that Dr. Surrusco did not examine her.  20 C.F.R. §§

404.1520c(c)(3) ("Relationship with the claimant.").  Still, Plaintiff contends that

Dr. Surrusco's opinion "is the only medical opinion of record[,]" and that the

ALJ's delineated reasons – by default the remaining supportability and consistency

reasons, which are the most important factors (20 C.F.R. §§ 404.1520c(b)(2))  –

are "boilerplate" language and "not supported by the evidence of record."  (ECF

No. 12, PageID.575-577.)

Preliminarily, even if Dr. Surrusco's opinion was the only medical opinion

of record (*see* 20 C.F.R. § 404.1527(a)(1)) and, therefore, "not inconsistent with

any opinions from any medical sources[,]" (ECF No. 12, PageID.576, 577), the

Sixth Circuit has "rejected the argument that a residual functional capacity

determination cannot be supported by substantial evidence unless a physician

offers an opinion consistent with that of the ALJ."  *Mokbel-Aljahmi v. Comm'r of

Soc. Sec.*, 732 F. App'x 395, 401 (6th Cir. 2018).  And this Court has previously

noted that, "the social security statute does not contemplate a bright line rule

requiring the ALJ to base his or her RFC finding on a physician's opinion." *Gross*

*v. Comm'r of Soc. Sec.*, 247 F.Supp.3d 824, 829 (E.D. Mich. 2017)(citing *Rudd v.*

*Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013)).

However, and significantly, the ALJ's descriptions of the opinion as "not

entirely consistent with the evidence in the record" and "lack[ing] thorough

support in terms of a detailed explanation," are problematic.  To the extent Plaintiff

challenges the ALJ's interpretation of Dr. Surrusco's opinion as "not entirely

consistent with the evidence in the record," (R. at 17), the Undersigned begins with

the ALJ's discussion of Plaintiff's musculoskeletal impairments:

> The record demonstrates a history of musculoskeletal impairments.
> The claimant suffers from multilevel [DDD] in the cervical spine with
> stenosis and foraminal encroachment, lumbar [DDD], cervical and
> lumbar radiculopathy, bilateral sacroiliitis, acromioclavicular joint
> arthritis of the right shoulder, and chronic pain syndrome.  Diagnostic
> imaging has confirmed musculoskeletal abnormalities.  The claimant
> is on pain medication.

(R. at 16.)  Although the ALJ does not provide express citations for this paragraph,

it is at least supported by:  (i) the September 27, 2016 x-rays, which revealed

"acromioclavicular joint arthritis" and "cervical spine [DDD] w[it]h [RUE]

radiculopathy right shoulder impingement[,]" (R. at 332, 335, 455); (ii) the

December 9, 2016 cervical spine MRI, which revealed "[d]egenerative disc disease

. . . , spinal stenosis most notably at CS-C6[,]" and "[m]ultilevel foraminal

encroachment[;]" (R. at 337, 407, 457, 519);[2] (iii) assessments of lumbar DDD,

cervical radiculitis, lumbar radiculitis, sacroiliitis, and chronic pain syndrome (R.

at 383, 380, 410, 461); and, (iv) her testimony that she takes Motrin, Gabapentin

and Norco (R. at 61; *see also* R. at 400).

    In another musculoskeletal impairments discussion, the ALJ provided

express citations to support the statement that Plaintiff "*has repeatedly exhibited*

*normal strength and sensation[,]*" as follows:

> In January 2017, examination found normal motor strength in the
> bilateral upper extremities. [R. at 400] The claimant denied gait
> problems. [R. at 404] In April 2017, exam found no motor or sensory
> deficits in the upper or lower extremities. The claimant stated that
> treatment for her cervical symptoms had been effective, and rated her
> pain at 2/10. [R. at 386] In July 2017, neurological examination was
> normal. Muscle strength was preserved in the lower extremities.
> Straight leg raising was negative. [R. at 380] The claimant exhibited
> normal deep tendon reflexes. [R. at 514]
>
> In November 2017 and January 2018, examination again found full
> muscle strength in the lower extremities, and the claimant was once
> again neurologically intact. [R. at 460, 469] There was no evidence
> of lower extremity motor or sensory deficit. [R. at 464]

(R. at 17 (emphasis added).)  Referencing these two paragraphs, the Commissioner

contends that the ALJ "explained what evidence was inconsistent with Dr.

Surrusco's finding[.]" (ECF No. 13, PageID.596-597.)  Maybe so.  But, the

---

[2] There is also record evidence of an October 4, 2017 lumbar spine MRI, which
revealed "[m]inimal central disc protrusion L2-L3[,]" (R. at 516-517), although the
ALJ does not seem to rely expressly on this diagnostic imaging.

Commissioner's statement that "[s]uch normal findings are inconsistent with the limitations on pushing/pulling[,]" (*id*., PageID.597) is without any citational support.

The ALJ could have expanded on his statement that Dr. Surrusco's opinion was "not entirely consistent with the evidence in the record." (R. at 17.) Arguably, Plaintiff's claim that the ALJ's reasoning is "not clear," is a bit like asking the Court to conclude that Dr. Surrusco's opinion – given the evidence upon which he relied (R. at 86-87) – is "consistent [rather than inconsistent] with the evidence in the record," (R. at 17). (ECF No. 12, PageID.576-577.) However, it is not clear that the ALJ intended the repeated exhibition of "normal strength and sensation" (R. at 17) as his reason for discounting the consistency of this opinion.

The ALJ's conclusion that the opinion "lacks thorough support in terms of a detailed explanation[,]" (R. at 17), is inaccurate. Based on above-described list of items described by the state agency medical consultant (*see* R. at 86-87), the Undersigned disagrees with the ALJ that Dr. Surrusco's opinion "lacks thorough support in terms of a *detailed explanation*." (R. at 17 (emphasis added).) As Plaintiff puts it, "the ALJ's description" of Dr. Surrusco's opinion "does not match" it. (ECF No. 12, PageID.576.)

> **b.** **Improperly addressing consistency and supportability *may* have played a role in the omission of a limitation in pushing and/or pulling with the RUE.**

Plaintiff also challenges the ALJ's statement that, "even if this determination were given great weight, this would have only supported the conclusion that the claimant is not disabled[,]" (R. at 17).  (ECF No. 12, PageID.577-578.)  Perhaps this was simply the ALJ's acknowledgment that, in many cases, the physical RFC determination equaled or was more restrictive than Dr. Surrusco's physical RFC determination, such as:  (i) sharing the exertional limitation to *light work* (even if omitting a further RUE push and/or pull limitation); (ii) being more restrictive with postural limitations by *never* climbing ladders, ropes, or scaffolds; (iii) being consistent, if not more restrictive, as to the manipulative limitation of never reaching overhead with the right upper extremity; and, (iv) being more restrictive by including environmental limitations.  (*Compare* R. at 15, *with* R. at 85-87; ECF No. 13, PageID.587, 592, 596.)

Yet, the crux of Plaintiff's appeal is that the ALJ's RFC determination lacks an additional exertional limitation with respect to her ability to push and/or pull with the RUE.  Plaintiff advocates that "there is evidence to suggest that a limitation to only occasional pushing or pulling [with] the [RUE] would have some impact on her ability to perform light work."  (*Id.*, PageID.578.)  Stated otherwise, Plaintiff contends that "a limitation to only occasional pushing or pulling could have changed the [RFC] from light to sedentary."  (ECF No. 14, PageID.609.)

"Light work" involves "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds[,]" and,

> . . . [e]ven though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with *some pushing and pulling of arm or leg controls*. To be considered capable of performing a full or wide range of light work, *you must have the ability to do substantially all of these activities*.

20 C.F.R. §§ 404.1567(b) (emphases added).  By comparison, work at the "sedentary" exertional level involves "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." 20 C.F.R. § 404.1567(a).

To the extent Plaintiff contends that "some light jobs require the ability to push or pull," (ECF No. 12, PageID.578-580; ECF No. 14, PageID.609-610), the jobs identified by the VE and set forth within the ALJ's opinion are a collator (DOT 653.687-010), a router (DOT 222.587-038) and an inspector and hand packager (DOT 559.687-074).  (R. at 18, 68.)  Whether any of these jobs "would have required the ability to perform more than occasional pushing or pulling with the [RUE][,]" (ECF No. 12, PageID.578-579), need not be addressed here, because Plaintiff has identified error in the ALJ's treatment of underlying and related opinion evidence.

Certainly, if Plaintiff were simply arguing that "the ALJ erred because he did not explicitly address [Dr. Surrusco's RUE pushing and/or pulling limitation]

in his decision," the argument "lacks merit, as [s]he cites no authority requiring an ALJ to explain each and every limitation or restriction he adopts or, conversely, does not adopt from a physician's opinion." *Kondrashov v. Comm'r of Soc. Sec.*, No. 16-CV-14044, 2018 WL 1146875, at *5 (E.D. Mich. Feb. 12, 2018) (Majzoub, M.J.), *report and recommendation adopted*, No. 16-14044, 2018 WL 1141802 (E.D. Mich. Mar. 2, 2018) (Cox, J.).  The ALJ was not required to adopt each and every one of his recommendations; nor was the ALJ required explain every limitation he did not adopt.

Nonetheless, Plaintiff has shown error in the ALJ's description of the opinion evidence, an error that calls into question the "unpersuasive" label given to Dr. Surrusco's opinion.  This is critical in Plaintiff's case, because the opinion is the sole basis put forward by Plaintiff for the push and/or pull limitation.  (*See* ECF No. 12, PageID.580.)  Moreover, in Plaintiff's case, a change from "light" to "sedentary" work is meaningful.  Plaintiff points out that, had she been limited to sedentary work, she would have been found disabled under Medical-Vocational Rule 201.12, *i.e.*, "closely approaching advanced age," "high school graduate or more–does not provide for direct entry into skilled work," and "unskilled or no[]" previous work experience.  20 C.F.R. § Pt. 404, Subpt. P, App. 2.  (*Id*., PageID.579.)

While the Undersigned acknowledges the Commissioner's assertion that "Plaintiff has failed to explain how the inclusion of a restriction to occasional pushing and pulling would have reduced her RFC from light to sedentary," (ECF No. 13, PageID.599), this is a question for another day.  Plaintiff having shown reversible error in the ALJ's treatment of Dr. Surrusco's opinion, the matter should be remanded for a rehearing and a resulting written opinion that includes, but need not be limited to:  (i) reassessment of the weight assigned to Dr. Surrusco's opinion, with specific attention to providing some meaningful explanation as to the inclusion or exclusion of a push and/or pull limitation, which may affect the jobs available to her; and, (ii) reassessment of the RFC's exertional limitation to light work, as opposed to sedentary.[3]

### 2.    Whether the ALJ drew "an accurate and logical bridge" between the evidence and the result?

Plaintiff argues that the ALJ "failed to draw an 'accurate and logical bridge'" between the evidence of her physical impairments and the related RFC limitations, namely to "light work."  (ECF No. 12, PageID.580.)  Plaintiff claims

---

[3] As noted above, the exertional limitation of pushing and/or pulling includes the operation of hand and/or foot controls.  (*See* R. at 86.)  Frankly, notwithstanding the fact that the ALJ listed several spinal issues among Plaintiff's severe impairments (R. at 12), and given the ALJ's seemingly benign treatment of Plaintiff's lower extremities (R. at 17), the Undersigned cannot help but wonder whether the limitation of "never left foot controls" was intended to be "never right hand controls."  (*Compare* R. at 15, 68, *with* R. at 86.)  This, too, should be clarified.

that the ALJ's failure "to fairly weigh the evidence in this matter . . . raises doubts about the overall supportability of his decision." (*Id*.)

### a.   Abnormal range of motion

To the extent this argument is based upon the ALJ's observation that Plaintiff "has repeatedly exhibited normal strength and sensation[,]" (R. at 17), the ALJ supported this statement with citations to records dated January 2017 (R. at 400, 404), April 2017 (R. at 386), July 2017 (R. at 380, 514), November 2017 (R. at 469), and January 2018 (R. at 460, 464).  Plaintiff contends that the ALJ did not expressly cite "abnormal range of motion findings, positive facet loading, or muscle spasms noted upon multiple other evaluations," – for which Plaintiff cites records dated September 29, 2016 (R. at 342), January 9, 2017 (R. at 405), July 12, 2017 (R. at 379), January 24, 2018 (R. at 460); and, February 20, 2018 regarding an August 22, 2016 visit (R. at 473).  (ECF No. 12, PageID.580-581.)

Preliminarily, the Court notes that the state agency medical consultant reviewed notes dated January 9, 2017 and July 12, 2017 (R. at 86-87, 403-406, 379-381, 409-411), as did the ALJ (R. at 17, 404, 380).  Moreover, the ALJ cited the January 24, 2018 record, albeit without attribution (R. 17, 460).  Thus, the ALJ expressly considered some of the records upon which Plaintiff relies, even if not for the same observations.  That the ALJ did not cite the September 29, 2016 (R. at 342) or the February 20, 2018 regarding an August 22, 2016 visit (R. at 473) is not

dispositive, as an ALJ is not obligated to expressly mention each piece

of evidence. *Bailey v. Comm'r of Soc. Sec.*, 413 F. App'x 853, 855 (6th Cir.

2011) (an ALJ "is not required to analyze the relevance of each piece of evidence

individually. Instead, the regulations state that the decision must contain only 'the

findings of facts and the reasons for the decision.'") (quoting 20 C.F.R. § 404.953).

Finally, and in any event, as noted above, the ALJ acknowledged that "[d]iagnostic

imaging has confirmed musculoskeletal abnormalities." (R. at 16.)

More importantly, as identified in the prior section, the ALJ's description of

the state agency opinion as consistent and supportable is problematic, in a manner

that leaves the subsequent reviewer guessing about the RFC's exertional

limitations.

### b.    Subjective statements

The ALJ determined that Plaintiff's "statements concerning the intensity,

persistence and limiting effects of [her alleged] symptoms are not entirely

consistent with the medical evidence and other evidence in the record for the

reasons explained in this decision." (R. at 16.) Plaintiff claims that the ALJ "does

not address" Dr. Potru's January 24, 2018 statement that Plaintiff "is typically able

to walk 100 feet without pain, able to lift 5 pounds but with pain, unable to bend

without pain, and unable to sit for longer than 30 minutes without pain[,]" (R. at

462). (*Id.*, PageID.581.) (*See also* ECF No. 14, PageID.610-611.)    To the extent

Plaintiff questions the support for lifting requirements of "light work," *i.e.*, "no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds[,]" 20 C.F.R. § 404.1567(b), state agency medical consultant Dr Surrusco opined that Plaintiff was capable of occasionally lifting and/or carrying 20 pounds and frequently lifting and/or carrying 10 pounds, which the SSA properly classified as consistent with "light" work.  (R. at 85-86, 91.)  While Dr. Potru's January 24, 2018 notes and Plaintiff's June 18, 2018 administrative hearing testimony suggest a "five pound" lifting limitation (R. at 462, 48), Plaintiff acknowledges that Dr. Potru's statement may have been Plaintiff's own subjective complaint (ECF No. 12, PageID.581 n.2), which is not a subject of her two developed statements of error.   In any case, the Court is convinced from its own review of that record that it does in fact relate to subjective complaints, in light of the prefatory adverb *typically*.  (R. at 462.)  If Plaintiff is described as "typically" able or not able to do certain things, it indicates historical reporting made to the doctor, not the doctor's own contemporaneous observation.  *See Mitchell v. Comm'r of Soc. Sec.*, 330 F. App'x 563, 569 (6th Cir. 2009) ("A doctor's report that merely repeats the patient's assertions is not credible, objective medical evidence and is not entitled to the protections of the good reasons rule.").  Thus, to the extent Plaintiff advocates for a 5-pound lifting and/or carrying limitation (*see* ECF No. 12, PageID.575, 581), her reliance on Dr. Potru's note (R. at 462) or Plaintiff's

own testimony (R. at 48) is more appropriately a challenge to the ALJ's treatment of Plaintiff's symptoms, which is not among Plaintiff's developed statements of error.

### c.     Activities of Daily Living

Plaintiff challenges the ALJ's treatment of her "daily activities." (ECF No. 12, PageID.582.) The ALJ found that Plaintiff had moderate limitation in her ability to adapt or manage herself – in support of which the ALJ noted mental health diagnoses (cognitive disorder, bipolar disorder, major depressive disorder, and anxiety) but also cited mental status examinations (R. at 387, 375, 422). (R. at 14.) Moreover, in both the Step 3 and RFC discussions, the ALJ stated, "in terms of [ADLs], in her function report, the claimant admitted that she is able to bathe, prepare meals, do light cleaning, do laundry, clean dishes, water her garden, go out 'all the time,' go shopping for groceries, do yoga, spend time outdoors, and socialize." (R. at 14, 17; *see also* R. at 225-229.)

The ALJ's "logical bridge" as to Plaintiff's daily activities is clear. Plaintiff's claim that the ALJ omitted discussion of "the limitations she had performing these activities," such as needing her husband's help to dress and slow performance of house chores (R. at 225, 226), is an otherwise undeveloped, two-sentence challenge to the ALJ's subjective statement determination. *McPherson v. Kelsey*, 125 F.3d 989, 995-996 (6th Cir. 1997) ("'[I]ssues adverted to in a

perfunctory manner, unaccompanied by some effort at developed argumentation,

are deemed waived.'") (quoting *Citizens Awareness Network, Inc. v. United States*

*Nuclear Regulatory Comm'n,* 59 F.3d 284, 293-294 (1st Cir.1995) (citation

omitted)).  And, while Plaintiff argues that "these somewhat minimal daily

functions are not comparable to typical work activities[,]" *Rogers*, 486 F.3d at 248,

the ALJ is permitted to consider a claimant's "daily activities" when "determining

the extent to which your symptoms limit your capacity for work . . . ."  20 C.F.R.

§§ 404.1529(c)(3)(i).[4]

## F.    Conclusion

Plaintiff has shown reversible error in the ALJ's consideration of the opinion

evidence, namely, as to the consistency and supportability descriptions of the state

agency opinion, which also weighs upon Plaintiff's argument that the ALJ "failed

to draw an 'accurate and logical bridge' between the evidence and the result."

(ECF No. 12, PageID.580-582.)  This is especially pertinent if the ALJ were to

include a limitation to pushing and/or pulling with respect to the RUE, as it seems

---

[4] Within this statement of error, Plaintiff also makes reference to Dr. Potru's record with respect to walking (R. at 462) and, seemingly, Dr. Surrusco's opinion that Plaintiff can stand and/or walk "[a]bout 6 hours in an 8-hour workday[,]" (R. at 86).  (ECF No. 12, PageID.581-582.)  In Plaintiff's opinion, the ALJ "seemingly substituted his own interpretation of the medical findings in reaching the conclusion that Morandy could perform the requirements of light work, including standing for six hours and performing frequent lifting."  (ECF No. 12, PageID.582.)  Any argument as to walking or standing is undeveloped.

likely the ALJ would also consider any resulting effect upon the exertional limitation of lifting and/or carrying.  *Walters,* 127 F.3d at 529.  Accordingly, as detailed in the foregoing discussion, it is **RECOMMENDED** that the Court **GRANT** Plaintiff's motion for summary judgment (ECF No. 12), **DENY** Defendant's cross-motion for summary judgment (ECF No. 13), and **REMAND** this matter to Commissioner for rehearing and issuance of a decision consistent with this report and recommendation, *i.e.,*  a decision which, *inter alia*, properly addresses the state agency consultant's opinion and, if warranted, makes any resulting adjustment to the RFC's overall exertional limitation.

## III.   PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days after being served with a copy, as provided for in Fed. R. Civ. P. 72(b)(2) and E.D. Mich. LR 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Hum. Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers*

*Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.*  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after being served with a copy of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.*  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated: February 22, 2021

Anthony P. Patti
UNITED STATES MAGISTRATE JUDGE